IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Michael Fentress,  )
    Plaintiff,  )
  )
v.  )  1:21cv1015 (AJT/IDD)
  )
Dr. Melvin Johnson, *et al.*,  )
    Defendants.  )

## MEMORANDUM OPINION

Michael Fentress ("Fentress" or "plaintiff"), a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his right to adequate medical care while detained in the Norfolk City Jail ("Jail"). [Dkt No. 1]. The Court screened the complaint, found it to be deficient, and allowed the Plaintiff to file an amended complaint. [Dkt. No. 8]. Plaintiff's amended complaint alleged that Dr. Johnson was deliberately indifferent related to his Continuous Positive Airway Pressure ("CPAP") machine and asthma inhaler. [Dkt. No. 10].[1] On January 5, 2022, the Court screened the amended complaint and dismissed the claims regarding his asthma inhaler and served the claims regarding the CPAP machine to proceed. [Dkt. No. 13]. Plaintiff alleges that Dr. Johnson was deliberately indifferent because Dr. Johnson did not give him replacement parts for his CPAP machine or the tools to clean it, and that mold built up in the CPAP machine parts, which caused Fentress to have breathing and sleeping problems.

Defendant Dr. Johnson was served and filed a motion to dismiss, which the Court denied on January 18, 2023. [Dkt. Nos. 22, 23]. On March 16, 2023, defendant Dr. Johnson filed a motion

---

[1] Defendants Wayne Handley, and Captain Heather Richardson were dismissed as defendants on October 28, 2021. [Dkt. No. 8].

for summary judgment with supporting affidavits and exhibits. [Dkt. Nos. 24-25]. Fentress was advised of his rights in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), but he has not responded. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the defendant's motion for summary judgment must be granted, and judgment will be entered in defendants' favor.

## I. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. Plaintiff has not filed a response disputing any of the listed undisputed facts. *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997) (court assumes uncontroverted facts in movant's motion for summary judgment are admitted); see also JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[2] Accordingly, the following statement of uncontested facts is derived from a review of defendants' statement of undisputed facts, and the record.

    1.    Fentress and a group of inmates were transferred to the Jail from the Hampton Roads Regional Jail ("HRRJ") on June 1, 2021. [Dkt. No. 25-1 at ¶ 2]. Fentress and several other inmates came to the Jail with CPAP machines. [*Id.* at ¶ 2; and at 8-9]. The Jail made accommodations for Fentress, and the other transferred inmates, so they could use the CPAP

---

[2] The record of admissible evidence includes the affidavits and exhibits [Dkt. Nos. 25-1 through -3], and Plaintiff's sworn pleading. [Dkt. No. 21]. *See Goodman v. Diggs*, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit").

2

machines. [*Id.*]. The Jail cells did not have electrical outlets and therefore the Jail renovated space and created a cell block that had electrical outlets, some hospital beds, showers, ramps, and sinks. [*Id.*].[3] Fentress was housed in a renovated cell directly across from the medical treatment center, which had glass windows and was within direct sight of the common area and cells. [*Id.*]. Dr. Johnson consulted with the Jail on the renovation process, but the Jail determined if, when, and how the renovations were made. [*Id.*].

2. Dr. Johnson was the Medical Director at the Jail during Fentress' incarceration. [*Id.* at ¶ 1]. Jail medical staff frequently saw the transferred inmates, including Fentress, to be sure that their medical needs, including those associated with CPAP machines, were being met. [*Id.* at ¶ 4].

3. Fentress reported to medical staff that he had obstructive sleep apnea ("OSA"), a common type of sleep apnea and, while it may interrupt sleep, it is not generally recognized as a life-threatening condition. [*Id.* at ¶ 3]. The most common treatment for OSA is the use of the CPAP machine, which Fentress had and used, and Dr. Johnson averred that OSA's symptoms are easily controlled with a CPAP machine. [*Id.*].

4. Fentress was able to use his CPAP machine to treat his OSA immediately upon arrival and used it successfully continuously throughout his incarceration. Medical staff observed and documented Fentress' use of his CPAP machine on many occasions between his arrival on June 1, 2021 and his receipt of replacement parts for his CPAP machine on September 14, 2021. [Dkt No. 25-1 at ¶ 4].[4] During the same time frame, Fentress was seen 30 times by medical staff,

---

[3] Plaintiff's affidavit avers that he did not have a hospital bed, but he does not dispute that there were hospital beds in the renovated area. [Dkt. No. 21 at 7]. The type of bed Fentress was provided is irrelevant to the claim. In addition, as noted hereon, Fentress was provided with an extra blanket to prop his head up. [Dkt. No. 25-1 at 17].

[4] The progress notes in Fentress's medical records reflect that on the following dates: June 3, 2021, medical staff reminded Fentress to clean his CPAP machine on a daily basis [Dkt. No. 25-1 at 13]; June 4 and 8, 2021, the notes reflect that Fentress was observed using CPAP machine [*Id.* at 16, 21]; June 6, 2022, Fentress was given a blanket to support his head with his CPAP machine [*Id.* at 17]; June 24 and 29, 2021, medical staff observed Fentress using his

3

and the medical notes do not indicate that he ever told either Dr. Johnson or medical staff that he was unable to use his CPAP machine. Fentress was seen by medical staff on the following dates: June 1, 3, 4, 7, 8, 14, 17, 21, 23, 24, and 29 [Dkt. No. 25-1 at 8-16, 18-35]; July 1, 6, 8, 13, 20, 22, 27-31 [Dkt. Nos. 25-1 at 36-41; 25-2 at 2-19]; August 3, 10, 17, 25, 31 [Dkt No. 25-2 at 20-32]; and September 7, 9, 14. [*Id.* at 33-39].

    5.    Dr. Johnson did not personally deliver the cleaning tools to Fentress for his CPAP machine; however, because of the specific efforts to accommodate the transferred inmates, he was aware that Fentress had been given the tools to clean his equipment in the first few days after his arrival. [Dkt. No. 25-1 at ¶ 9]. In addition, the medical records confirm that Fentress was given cleaning tools within two days after his arrival, Fentress was advised by medical staff to clean his CPAP equipment daily. [*Id.* at 13]. The medical staff also documented that Fentress was given additional cleaning supplies on July 7, 2021, August 25, 2021, and September 9, 2021 for his CPAP machine. [Dkt. No. 25-2 at 13, 30, 36].[5]

    6.    Fentress and the new inmates were informed that they were permitted to obtain their own replacement parts for their CPAP machines and many inmates had family members or friends bring them replacement parts. [Dkt. No. 25-1 at ¶ 10]. The Jail decided that the inmates who brought their CPAP machines from home would be required to obtain their own replacement equipment; however, if an inmate had received a CPAP machine from a jail or if the inmate notified the Jail that he was not able to obtain the replacement equipment for his personal CPAP machine,

---

CPAP machine [*Id.* at 33, 35]; July 27, 2021, Fentress was observed using CPAP machine [Dkt. No. 25-2 at 9]; and August 10 and 17, 2021, Fentress was observed using CPAP machine. [*Id.* at 23, 25].

[5] A Jail staff member provided Fentress with soap to clean his CPAP, but it was apparently inappropriate for use on a CPAP machine because it was scented. [Dkt. No. 21 at 2]. During the medical staff's rounds on July 29, 2021, Fentress complained that he had been provided scented soap to clean his CPAP tubing, and defendant Dr. Johnson, who was accompanying on rounds that day, told Fentress to use "bleach and water." [Dkt. No. 25-2 at 15]. Fentress responded, he was "OK with that," and then complained about correctional officers telling how to clean his CPAP machine. [*Id.*].

then the Jail would purchase the replacement equipment for the inmate. [*Id.*]. Dr. Johnson did not make the decision regarding if the Jail would purchase CPAP equipment for the inmates. [*Id.*].

7. The Jail typically controlled the provision of equipment to inmates as a security measure. [*Id.*]. As an example, medical staff documented that they notified Jail staff that Fentress needed a lower bunk and had a CPAP machine via a form. [Dkt. No. 25-1 at 10]. The form is used to notify custody officers of a patient's special needs and accommodations, and documents which member of the Correctional Staff was notified. The medical staff notified Jail staff again when Fentress needed an extra blanket. [*Id.* at 17].

8. When an inmate arrives with a CPAP machine, medical staff identify the source, type, model, and condition of the machines. [*Id.* at ¶ 11]. The records show that Fentress had his own, personal CPAP machine at HRRJ, and that HRRJ broke his machine and purchased a new one for him. The situation caused some initial uncertainty at the Jail about whether or not Fentress' CPAP machine was his personal property. [Dkt. Nos 25-1 at ¶ 11; 25-2 at 3]. At some point on or after July 13, 2021, medical staff determined that Fentress' CPAP machine was not his personal property, and the replacement parts (mask and hose) for his CPAP machine were ordered. [Dkt. No. 25-1 at ¶ 11].[6] The medical staff documented that they received and delivered the replacement CPAP machine parts (mask and hose) to Fentress on September 14, 2021. [Dkt. No. 25-2 at 38]. The progress nots indicate that Fentress was able to use his CPAP machine during this time frame. *See, supra* at note 4.

---

[6] The record indicates that Fentress requested "new filters" at the end of June or the beginning of July 2021. [Dkt. No. 21 at 2]. Fentress was informed on July 6, 2021 he would have to contact the manufacturer or his family to obtain the replacement parts for his CPAP. [Dkt. No. 25-1 at 41]. Fentress filed an emergency grievance on July 7, 2020. [Dkt. No. 21 at 4-5]. Staff members (not defendant Dr. Johnson) replied on July 12, 2021 and informed him that because his CPAP was not issued by the Jail or HRRJ he or his family needed to obtain the replacement parts himself. [*Id.* at 5]. On July 13, 2021, Fentress informed medical staff that his CPAP was given to him by HRRJ because they had broken his old CPAP machine. [Dkt. No. 25-2 at 3].

9. The medical records show that, between his arrival on June 1, 2021 (the day he received replacement parts for his CPAP machine) and September 14, 2021, Fentress was seen frequently by medical staff more than 30 times and there is no indication in the medical records Fentress reported mold or problems sleeping and breathing due to mold. *See, supra* at ¶ 4. Although it was not documented every time, Dr. Johnson avers that he personally joined the medical provider on her rounds approximately every other week and personally saw Fentress on those occasions. [Dkt. Nos. 25-1 at ¶ 5 and at 19; 25-2 at 15]. In addition to the 30 medical visits, Fentress was in close proximity to "medical" in the cell block, which allowed for additional contact with medical staff. [Dkt. No. 25-1 at ¶ 5].

10. Beginning on June 2, 2021, one day after his arrival, Fentress was seen by medical staff twice per day when they performed medication administration rounds and offered him his daily medications. [Dkt. Nos. 25-1 at ¶ 6; 25-3 at 2-26]. Despite his close proximity to medical staff and the frequent visits and contact with medical staff, there is no documentation in any of the above records that Fentress reported mold in his CPAP machine, problems sleeping or breathing due to mold.[7] Dr. Johnson was not aware of any report that Fentress had mold in his CPAP machine parts, that he was having trouble sleeping, or that he had any problems breathing. [Dkt. No. 25-1 at ¶ 7]. Moreover, Fentress' lungs and heart were assessed by a healthcare provider 23 times during the same time frame and were found to be normal. [Dkt. Nos. 25-1 at ¶ 7; 25-1 at 11-16, 18-41; 25-2 at 2-9, 20-28, 31-36]. There was no report that Fentress had mold in his CPAP machine parts or that it was making it difficult for him to sleep or breathe and there was no reason for Dr. Johnson to suspect these claims. [Dkt. No. 25-1 at ¶ 7].

---

[7] The medical records show that Fentress reported problems breathing on two occasions between June 1, 2021 and September 14, 2021. On each occasion (June 14 and 23, 2021), however, the reported problems were not associated with any complaint of mold and were consistent with his asthma diagnosis. He was successfully treated both times. [Dkt. No. 25-1 at 23, 31].

6

11. The jail ordered a new mask and hose which were provided to Fentress when they arrived on September 14, 2021. [Dkt. Nos. 25-1 at ¶ 11, and at 41; 25-2 at 38]. Between July 1, 2021 and September 14, 2021 when the replacement parts arrived, Fentress was observed using his CPAP machine on July 27, 2021, [Dkt. No. 25-2 at 9]; and August 10 and 17, 2021. [Dkt. No. 25-2 at 23, 25]. In addition, as reflected in the medical records, Fentress did not report any problems with using the CPAP machine and did not report any mold in the machine in the 30 medical visits and other contacts with medical staff. Dr. Johnson opined that Fentress' wait of less than two months for replacement parts for his functioning and usable CPAP machine did not put him at risk for any serious illness or injury, especially since no such injury was reported. [Dkt. No. 25-1 at ¶ 12].

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The essence of the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to the jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After that required showing, however, the party opposing the motion must set forth specific facts, supported by evidence, showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. The opposing party may not rest on the mere pleadings. *Celotex*, 477 U.S. at 324.

"In determining whether summary judgment is appropriate, courts determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law.'" *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 769 (4th Cir. 2003). "It is also true that 'the mere existence of some disputed facts does not require that a case go to trial', rather, '[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict.'" *Poole v. Pass*, 351 F.Supp.2d 473, 478 (E.D. Va. 2005) (quoting *Thompson Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995)). A mere scintilla of proof will not prevent the entry of summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

### III. Deliberate Indifference

To state a claim under § 1983 for deliberate indifference to a serious medical need, "a prisoner must show that he had a serious medical need, and that officials knowingly disregarded that need and the substantial risk it posed." *Depaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citation omitted). A defendant acts with deliberate indifference, *i.e.,* if the defendant "had actual knowledge of [plaintiff's] serious medical needs and the related risks, but nevertheless disregarded them." *Id.* (citing *Scinto v. Stansberry*, 841 F.3d 219, 225-26 (4th Cir. 2016)).

Not every claim by a prisoner that he has not received adequate medical treatment is a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). In addition, proving deliberate indifference is a very high standard and a showing of mere negligence will not meet this standard. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *accord Jackson v. Lightsey*, 775 F.3d 170, 178 (4h Cir. 2014) (deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would

8

constitute medical malpractice will not rise to the level of deliberate indifference"); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("[n]egligence or malpractice in the provision of medical services does not constitute a claim under § 1983," and "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." ).

Defendant Dr. Johnson disputes whether Fentress' OSA was a serious medical condition, For the purposes of this motion, the Court will assume that Fentress's OSA is a serious medical condition. The undisputed material facts establish that Dr. Johnson, as well as the medical staff at the Jail, were attentive and saw Fentress repeatedly during the relevant time period, June 2021 through September 14, 2021. As established by the summary judgment record, in that roughly 75-day period, Fentress was seen by Johnson or other medical staff members on 30 different occasions, and he was seen daily by medical staff dispensing medication. Fentress' angst is over both the failure to provide him with replacement parts on or about July 1, 2020, which he addressed in an emergency grievance he filed on July 7, 2020, and giving him a soap that was inappropriate for us in cleaning CPAP machines because it was scented. [Dkt. No. 21 at 2-3, 4-5]. Staff members (not defendant Dr. Johnson) replied on July 12, 2021 and informed him that because his CPAP was not issued by the Jail or HRRJ he or his family needed to obtain the replacement parts himself. [*Id.* at 5]. Fentress informed medical staff on July 13, 2021 that the CPAP machine was not his personal property, and after that was confirmed a new mask and hose were ordered. The mask and hose were received and provided to Fentress on September 14, 2021, approximately two months after they were ordered.

The quality of an accused defendant's actions that meets the very high deliberate indifference standard is that which is "so grossly incompetent, inadequate, or excessive as to shock

9

the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). It is far more than "ordinary lack of due care"; it is "obduracy and wantonness, not inadvertence or error in good faith." *Anderson v. Kingsley*, 877 F.3d 539 (4th Cir. 2017). There is a "clear distinction between situations in which the physician provides no medical care, which may amount to deliberate indifference, and those in which the physician provides merely substandard care, which amounts at most to negligence." *Coppage v. Mann*, 906 F. Supp. 1025, 1038 (E.D. Va. 1995).

Here, Dr. Johnson did not deny Fentress treatment for his OSA and Fentress does not allege in his amended complaint that he was unable to use his CPAP machine. To the contrary, the summary judgment record establishes that, during the relevant time period, Fentress had a CPAP machine to treat his OSA, he was able to use the CPAP machine immediately upon arrival at the Jail, and that he used the CPAP machine continuously throughout his incarceration. *See, supra* at 3-4. Importantly, defendant Johnson had no authority to request or order replacement parts during June and the first half of July because the CPAP machine had been classified as personal property by the Jail. Jail policy was that the Jail would not order replacement parts for a CPAP that was personal property. In mid-July, when the CPAP was determined to not be personal property, the replacement parts were ordered. The undisputed facts establish that defendant Dr. Johnson had no authority to order because the decision regarding the purchase of CPAP equipment, including replacement equipment 'was not a medical decision but was an administrative decision made by the Jail.' [Dkt. No. 25-1 at 10]. "The Jail typically controlled the provision of equipment to inmates as a security measure." [*Id.*].

There are two issues that arise from the record. The first, is the approximate two-month delay in Fentress being provided with the replacement parts. Delay of, or interference with,

10

medical treatment can amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The Fourth Circuit, however, has held that there is no Eighth Amendment violation

> unless "the delay results in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." *See Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

*Formica*, 739 F. App'x at 755 (4th Cir. 2018). Substantial harm may also be "'a lifelong handicap or permanent loss.'" *Coppage*, 906 F. Supp. at 1037 (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Formica*, 739 F. App'x at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

Here the summary judgment record does not establish he delay resulted in substantial harm to Fentress.[8] As noted, to the contrary, the medical records during the period of delay do not

---

[8] In his response to the motion to dismiss, Fentress alleged, without support, that the delay "took time off my life." [Dkt. No. 21 at 6]. The undisputed medical records establish that Fentress's physical health during the delay was monitored every day or two and he was stable. Further, as noted, Fentress continued to use his CPAP during the two-month delay and did not complain about mold during any of his frequent encounters with medical staff. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted) ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of [deliberate indifference]"). A district court within the Fourth Circuit addressed a similar unsupported allegation by a *pro se* inmate.

> Plaintiff's mere lay disagreement with the opinions or diagnoses of medical professionals, without any contrary medical evidence to show that any medical professional...violated the requisite standard of care, is not sufficient to defeat the Defendants' motion for summary judgment on his § 1983 deliberate indifference claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances); *Scheckells v. Goord*, 423 F. Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing *O'Connor v. Pierson*, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for.")); *Green v. Senkowski*, 100 F. App'x 45 (2d Cir. 2004) (unpublished opinion) (finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) ("Even though *pro se* litigants are held to less stringent pleading standards

establish any impact on Fentress's overall health. Indeed, during his 30 encounters with medical staff, Fentress complained about a significant number of matters: his asthma; medication amount adjustments; needing to prop his head up; foot fungus; "tight chest" that he was provided with a breathing treatment for (twice); reflux; shortness of breath; he did not get peanut butter on his food tray; kitchen put bologna and soy on his food tray; being served oatmeal; being provided with scented soap; nausea; requested an inhaler for asthma and medication for back pain; back pain; and shoulder pain. [Dkt. Nos. 25-1 at 11, 16, 23, 24, 31, 33, 37, 39; 25-2 at 5, 15, 23, 25, 34, 38]. Absent from this long list of complaints is any complaint about his CPAP machine or mold. Notably, on eight of his 30 encounters with medical staff, he had no complaints on June 8, 2021, June 21, 2021 (other than getting his "Prilosec" which had been prescribed for reflux), June 29, 2021, July 8, 2021, July 13, 2021, July 22, 2021, August 3, 2021; and August 31, 2021. [Dkt. Nos. 25-1 at 21, 29, 35, 41; 25-2 at 3, 7, 21, 32]. The summary judgment record establishes that defendant Dr. Johnson was not deliberately indifferent to Plaintiff's medical needs.

A second and equally dispositive issue is Plaintiff's failure to prove causation. The summary judgment record does not establish that defendant Dr. Johnson had the authority to approve the purchase of the replacement parts, which is a matter controlled by Jail administrators. "[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citations omitted); *Mann v. Taser Intl, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (in addition to alleging a defendant's deliberate indifference to his medical needs, plaintiff must also prove causation

---

than attorneys the court is not required to accept as true legal conclusions or unwarranted factual inferences.'").
*Jackson v. Ray*, No. 9:19cv2402, 2020 U.S. Dist. LEXIS 103749, *14-15 (D.S.C. May 26, 2020), *adopted by*, 2020 U.S. Dist. LEXIS 103211 (D.S.C. June 12, 2020).

between that indifference and his injuries). Assuming the delay resulted in the necessary "substantial harm" for a claim of deliberate indifference, defendant Dr. Johnson's actions or inactions did not cause the delay. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law"). The delay was attributable to a misunderstanding about whether the CPAP machine was Fentress' personal property. Indeed, once that was cleared up the parts were ordered.

Likewise, the July 29, 2021 medical records establish that when Fentress complained about the scented soap to defendant Dr. Johnson, Dr. Johnson told him to use 'bleach and water," and Fentress responded that he was "OK with that." [Dkt. No. 25-2 at 15]. More importantly, the provision of the inappropriate scented soap did not prohibit Fentress from using the CPAP machine and furthermore it did not result in substantial harm when Dr. Johnson provided him an acceptable solution. *See also, supra* at ¶ 5. If there was any injury, defendant Dr. Johnson was not the cause, and his motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment [Dkt. No. 24] must be granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 8 day of June, 2023.

Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge